# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-478

**TINA PALMER**

**VERSUS**

**ALLIANCE COMPRESSORS**

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 02
PARISH OF RAPIDES, NO. 03-05871
HONORABLE JAMES L. BRADDOCK
WORKERS' COMPENSATION JUDGE

**********

**J. DAVID PAINTER
JUDGE**

**********

Court composed of Glenn B. Gremillion, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED.**

Mark A. Watson
Post Office Box 1711
Alexandria, LA 71309
Counsel for Defendant-Appellee:
    Alliance Compressors

Joe Payne Williams
Post Office Box 15
Natchitoches, LA 71458-0015
Counsel for Plaintiff-Appellant:
    Tina Palmer

**PAINTER, Judge.**

In this workers' compensation case, Plaintiff, Tina Palmer ("Palmer"), appeals the judgment of the Workers' Compensation Judge ("WCJ") denying her claim for supplemental earnings benefits ("SEB"), penalties, and attorney fees. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties stipulated that Palmer was injured[1] on August 21, 2002, in the course and scope of her employment with Alliance Compressors ("Alliance") and that she was treated by an orthopaedist, Dr. John P. Sandifer, and allowed to return to work in a light duty position that same day. The parties further stipulated that Palmer lost no time from work as a result of her injuries and that Alliance accommodated the light duty restrictions. At the time of her accident, Palmer had an average weekly wage of three hundred eighty-seven dollars and sixty cents ($387.60). On December 2, 2002, Palmer received a raise which made her average weekly wage four hundred three dollars and twenty cents ($403.20).

Palmer continued to work for Alliance until she was terminated on December 11, 2002 for cause. The parties additionally stipulated that the termination was for cause and completely unrelated to her job-related accident and/or injuries sustained therein. The stipulation included an explanation that Palmer unsuccessfully attempted to conceal a violation of the company's attendance policy and knew that the violation of the attendance policy alone could result in her termination. The stipulation went on to include a statement that the parties knew of no reason why Palmer could not still be employed by Alliance at a weekly wage equal to or higher than her pre-accident average weekly wage but for the "for cause" termination.

---

[1]Palmer developed carpal tunnel syndrome in her left wrist.

1

Reasoning that it would be totally contrary to the public purpose and policy of the workers' compensation law to allow an employee to violate company policies after being provided with a job that accommodates the employee's restriction and, in effect, hold the employer hostage to pay benefits, the WCJ denied Palmer's claims for SEB, penalties, and attorney fees. For the reasons that follow, we affirm the decision of the WCJ.

**DISCUSSION**

The sole issue before this court is whether or not Palmer was entitled to SEB after December 11, 2002. Palmer contends that regardless of the reasons for her firing, she is still restricted to light duty work and is entitled to SEB, with an earning capacity of five dollars and fifteen cents ($5.15) per hour for forty hours of work per week. Alliance, on the other hand, contends that as a result of Palmer's "for cause" termination, it is no longer responsible for any continuing indemnity benefits, including but not limited to SEB, after December 11, 2002.

We first note that the determination of whether an employee is entitled to SEB is necessarily a facts and circumstances inquiry in which courts must be mindful of the jurisprudential tenet that workers' compensation law is to be construed liberally in favor of finding coverage. *Manpower Temporary Services v. Lemoine*, 99-636 (La.App. 3 Cir. 10/20/99), 747 So.2d 153, *citing Daigle v. Sherwin-Williams Co.*, 545 So.2d 1005 (La.1989). Accordingly, we may not set aside the factual findings of the WCJ in the absence of manifest error or unless it is clearly wrong. *Lacaze v. Alliance Compressors*, 03-1566 (La.App. 3 Cir. 4/14/04), 870 So.2d 1150.

"The purpose of SEBs is to compensate an injured employee for the wage-earning capacity lost as a result of a work-related accident." *Lacaze*, 870 So.2d at 1154, *citing City of Jennings v. Dequeant*, 96-943 (La.App. 3 Cir. 11/5/97), 704

2

So.2d 264, *writ denied* 98-0610 (La. 4/24/98), 717 So.2d 1174. An employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his or her inability to earn ninety percent (90%) or more of the average pre-injury wage under the facts and circumstances of the individual case. *Lacaze*, 870 So.2d at 1155, *quoting Freeman v. Poulan/Weed Eater*, 93-1530, p. 7 (La. 1/14/94), 630 So.2d 733, 739; La.R.S. 23:1221(3)(a).

In this case, Palmer necessarily fails in meeting her burden of proof by virtue of the stipulations that, at the time of her accident, she had an average weekly wage of three hundred eighty-seven dollars and sixty cents ($387.60) and that, on December 2, 2002, after her on-the-job injury, she received a raise which made her average weekly wage four hundred and three dollars and twenty cents ($403.20), and that the parties knew of no reason why Palmer could not still be employed by Alliance at a weekly wage equal to or higher than her pre-accident average weekly wage but for the "for cause" termination. In effect, Palmer stipulated that as of December 2, 2002, she was earning more than one hundred percent (100%) of her pre-accident wages and that the reason she was unable to earn ninety percent (90%) or more of her average pre-injury wage after December 11, 2002 was because of her own attempt to conceal her violation of Alliance's attendance policy and not because of her injury. Therefore, she failed to meet the applicable burden of proof and is not entitled to SEB for that reason.

Palmer relies heavily on the cases of *Palmer v. Schooner Petroleum Services*, 02-397 (La.App. 3 Cir. 12/27/02), 834 So.2d 642, *writ denied*, 03-367 (La. 4/21/03), 841 So.2d 802, and *Lacaze*, which coincidently involves the same employer, for the proposition that the termination of employment does not destroy that employee's entitlement to SEB. In *Palmer*, this court recognized that termination in and of itself

3

does not end entitlement to SEB. Palmer's employer contended that the termination was due to substandard job performance, but this court found that the WCJ's factual determination of poor work performance was manifestly erroneous and that the claimant was, therefore, entitled to SEB despite his termination. In so finding, this court stated: "The record simply does not reasonably substantiate a degree of poor work performance that would be tantamount to Palmer's refusal to work and a concomitant loss of SEB." *Id*. at 651.

In *Lacaze*, the employee returned to work after being injured on the job and was immediately suspended for two weeks. Her benefits were also terminated on that date. She returned to work after the suspension and was terminated several days later. She did find work as a housesitter after her termination from Alliance. This court found that Lacaze was entitled to SEB during her suspension and afterwards, subject to a credit for the days that she did work for Alliance, and that her entitlement to SEB did not cease upon her termination based upon the finding that Lacaze did not refuse to accept employment, but rather was not permitted to work due the suspension and termination imposed by Alliance.

We agree that an employer cannot create a job accommodating the restrictions placed on the injured employee and then fire that employee, without cause, to avoid paying benefits. On the other hand, we recognize that an injured employee cannot refuse to accept the employment or blatantly violate company policy without the possibility of recourse by the employer.

In *Fusilier v. Slick Const. Co.*, 94-11, p.4 (La.App. 3 Cir. 6/1/94), 640 So.2d 788, 791,we held that "[w]here the claimant has been released to light duty work and refuses his employer's offer of light duty work at the same wage and hours, he is not entitled to SEB." The instant case can be decided on this rationale, which is

4

consistent with our prior holdings in *Palmer* and *Lacaze*. The parties stipulated that Alliance provided a job to Palmer after her injury that accommodated the restrictions placed upon her and afforded her an even greater rate of pay after she received a raise in that light duty position. The parties further stipulated that the light duty job would still be available to her but for her termination for cause unrelated to the injury. The fact that the job is no longer available to her solely due to her own actions is no different from refusing to accept the job in the first place and, thus, terminates her entitlement to SEB.

Having found that Palmer failed to meet her burden of proving entitlement to SEB, we find that Alliance reasonably controverted Palmer's claims and that its actions were neither arbitrary nor capricious. Thus, the WCJ was correct in denying Palmer's claims for penalties and attorney fees.

## DECREE

Based on the stipulations of the parties, particularly those that the termination was for cause and completely unrelated to her job-related accident and/or the injuries sustained therein, and that the parties knew of no reason why Palmer could not still be employed by Alliance at a weekly wage equal to or higher than her pre-accident average weekly wage but for the "for cause" termination, we cannot say that the WCJ committed manifest error or was clearly wrong in finding that Palmer was not entitled to SEB. We, therefore, affirm the WCJ's denial of Palmer's claims for SEB, penalties, and attorney fees as well as the dismissal of her claims with prejudice. All costs of this appeal of assessed to Plaintiff-Appellant, Tina Palmer.

**AFFIRMED.**